```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

vs.                        Case No. 2:09-cv-229-FtM-29SPC

FOUNDING PARTNERS CAPITAL MANAGEMENT,
and WILLIAM L. GUNLICKS,

           Defendants,

FOUNDING PARTNERS STABLE-VALUE FUND, LP,
FOUNDING PARTNERS STABLE-VALUE FUND II, LP,
FOUNDING PARTNERS GLOBAL FUND, LTD., and
FOUNDING PARTNERS HYBRID-VALUE FUND, LP,

           Relief Defendants.
_____/

**OPINION AND ORDER**

    This matter comes before the Court on Defendant William L. Gunlicks' Renewed Emergency Motion to Modify the Asset Freeze (Doc. #72) filed on May 19, 2009. Plaintiff's Response (Doc. #86) was filed on June 4, 2009, and defendant Gunlicks' Reply (Doc. #97) was filed on June 24, 2009. At the Court's direction, the Receiver filed a Response (Doc. #99) on June 29, 2009.

    On April 20, 2009, the Court entered an Order Freezing Assets and Other Emergency Relief (Doc. #10) (the "asset freeze order"). In an Opinion and Order filed on May 7, 2009 (Doc. #56), the Court denied William L. Gunlicks' (defendant or Gunlicks) initial motion to modify the asset freeze order. In his renewed motion to modify the asset freeze order, defendant asks the Court to unfreeze those

assets that exceed $5,912,500.00, or alternatively, to modify the asset freeze order to allow payment of expenses to preserve assets, and provide living expenses and attorneys' fees.

**I.**

The parties continue to dispute the amount of assets subject to disgorgement, and therefore available for freezing. The Securities and Exchange Commission (SEC) continues to assert that the $550 million paid by investors is the appropriately estimated disgorgement amount. In its May 7, 2009 Opinion and Order (Doc. #56) however, the Court was not convinced that this amount accurately represented the wrongful profit or ill-gotten gain obtained by defendant. Instead, the Court utilized the management fee charged by Founding Partners (1.75% annually), multiplied by the $550 million asserted by the SEC, to arrive at the $5,912,500.00 figure as "a reasonable, if probably understated, amount of the ill-gotten gain obtained by Gunlicks." (Doc. #56, p. 9.) The Court further stated that it was willing to reconsider the amount subject to the asset freeze upon motion by either party. (Id.)

Gunlicks is willing to accept the $5.9 million figure, though he asserts that it is probably too high given the nature of the SEC's claim. The SEC continues to press for the $550 million amount as the proper measure of ill-gotten gains. Alternatively, the SEC argues that the financial statements of Founding Partners reveal that the true amount received in fees and royalty payments

exceeded $27 million (see Doc. #86, p. 10), and that this is a more accurate figure utilizing the Court's prior approach. After examining the Declaration of Tonya Tullis (see Doc. #86-2) and its attachments, the Court finds that the SEC has established a reasonable basis to believe that the amount of the ill-gotten gains, and therefore the amount subject to an asset freeze, approximates at least $27 million.

The assets identified by defendant are valued by defendant at approximately $9.9 million. While the parties dispute the reliability of the valuation, it is clear that the amount does not approach the $27 million figure that the SEC has shown to be a reasonable estimate of ill-gotten gains. Therefore, defendant's request to modify the asset freeze order to unfreeze amounts in excess of $5.9 million is denied.

**II.**

Defendant also requests that the Court modify the asset freeze order to allow payment of expenses to preserve assets, and provide living expenses and attorneys' fees. In a statement made under penalty of perjury, Gunlicks stated, "Currently, I have no sources of income or support." (Doc. #72-3, ¶4.) The SEC and the Receiver both oppose this request.

Defendant owns five pieces of real property and requests permission to pay expenses for their upkeep, in order to preserve the assets. Defendant requests $21,693.35 per month to pay the necessary expenses on these properties. Defendant also requests

$2,943 per month for living expenses, plus the one-time cost of plane tickets for defendant and his wife to return to Naples, Florida. Finally, defendant requests payment of the $75,000 retainer fee to Carlton Fields, P.A., the law firm representing him in this case.

Preservation of assets for the future benefit of the investors is certainly a legitimate goal. It is unclear, however, whether in this case it would simply constitute a situation of "throwing good money after bad." The Receiver opposes the request and after reviewing the available information, the Court is not convinced that these expenditures should be allowed.

Living expenses of under $3,000 per month are reasonable, as is a one-time payment of commercial airfare for defendant and his wife to return to Naples, Florida. These expenditures will therefore be permitted.

Payment of the attorney retainer fee is a matter within the discretion of the Court. Little appellate guidance has been cited or found, but it appears that fundamental fairness requires the payment of at least some amount for attorneys' fees at this stage of the proceedings. Accordingly, the Court will approve the payment of the $75,000 retainer, under and including the conditions set forth below. No assumption should be made that further funds will be released for this purpose, though the Court does not rule out the possibility of such payment upon motion and a proper showing.

Accordingly, it is now

**ORDERED:**

Defendant William L. Gunlicks' Renewed Emergency Motion To Modify the Asset Freeze (Doc. #72) is **GRANTED** in part and **DENIED** in part as follows:

1. The request to unfreeze defendant's assets above $5,912,500.00 is **DENIED.**

2. The request to permit payment of expenses to preserve assets is **DENIED.**

3. The request to permit payment of living expenses is **GRANTED** to the extent that the Court approves releasing $3,000 per month from the frozen assets of defendant in the manner set forth below for the payment of ordinary living expenses.

4. The request to permit a one-time payment of commercial airfare for defendant and his wife to return to Naples, Florida, is **GRANTED** to the extent that the Court approves releasing the cost of the commercial airfare to Fort Myers, Florida, in the manner set forth below.

5. The request to permit payment of the $75,000 retainer fee to Carlton Fields, P.A. is **GRANTED** to the extent that the Court approves releasing this amount in the manner set forth below and conditioned upon the <u>in camera</u> filing of monthly billing statements by Carlton Fields, P.A., for services rendered to defendant in this case which account for any portion of the $75,000.

6. Unless otherwise agreed by the Receiver and defendant William L. Gunlicks, payments of the released amounts set forth above are to be made from the checking account at North Shore Community Bank & Trust, 7800 Lincoln Avenue, Skokie, Illinois, 60077.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of July, 2009.

_/s/ John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record