```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

vs.                            Case No.   2:09-cv-229-FtM-29SPC

FOUNDING PARTNERS CAPITAL MANAGEMENT, and WILLIAM L. GUNLICKS,

        Defendants,

FOUNDING PARTNERS STABLE-VALUE FUND, LP, FOUNDING PARTNERS STABLE-VALUE FUND II, LP, FOUNDING PARTNERS GLOBAL FUND, LTD., and FOUNDING PARTNERS HYBRID-VALUE FUND, LP,

        Relief Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Sun Capital Healthcare, Inc. and Sun Capital, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #122), filed on July 22, 2009. The Receiver, Daniel S. Newman, filed an Opposition (Doc. #124) and a Motion for Permission to File Response in Excess of Page Limit (Doc. #123) on July 24, 2009.

**I.**

Sun Capital, Inc. and Sun Capital Healthcare, Inc. (collectively, "Sun Capital" unless otherwise stated) were named as "relief defendants" by the Securities and Exchange Commission (SEC) in the Complaint (Doc. #1) against defendants Founding Partners

Capital Management, Co. and William L. Gunlicks. It was alleged that Founding Partners Stable-Value Fund, LP ("Stable-Value") made loans to Sun Capital pursuant to written loan agreements which allowed Sun Capital to use the loan proceeds to purchase healthcare and commercial receivables. The permitted uses of the loan proceeds were expanded by Stable-Value beginning in 2004, and the SEC alleges that the newly-allowed permitted uses increased the risks to Stable-Value's investors. Various fraud-related counts were brought against the actual defendants, but no substantive claims were made against Sun Capital.

On April 20, 2009, the Court entered an Order Appointing Receiver (Doc. #9) over defendant Founding Partners Capital Management, Co. and relief defendants Stable-Value, Founding Partners Stable-Value Fund II, LP, Founding Partners Global Fund Ltd., and Founding Partners Hybrid-Value Fund, LP. On May 13, 2009, the Receiver was removed (Doc. #70) and on May 20, 2009, a replacement Receiver was appointed (Doc. #73).

In an Opinion and Order (Doc. #89) filed June 8, 2009, the Court dismissed Sun Capital as relief defendants. The Court found that Sun Capital had an ownership interest or legitimate claim in the loan proceeds it received from Stable-Value and that therefore, Sun Capital were not proper relief defendants. The Court found it to be undisputed that Sun Capital received the loan proceeds pursuant to written loan agreements with Stable-Value, which gave Sun Capital certain rights and obligations with regard to the loan

proceeds. The Court further found that there had been such a debtor-creditor relationship between Sun Capital and Stable-Value based on written agreements since 2001. The Court concluded that this constituted a sufficient legitimate ownership interest to preclude treating Sun Capital as relief defendants.

On July 14, 2009, the Receiver filed a Complaint (the "Receiver's Complaint") (Doc. #1) against Sun Capital Healthcare, Inc. (SCHI), Sun Capital, Inc. (SCI), and another defendant in Case No. 2:09-cv-445-FtM-99SPC. As relevant to the Sun Capital defendants, the Receiver's Complaint alleges that they are in default of two loans totaling $550 million made by Stable-Value pursuant to written Credit and Security Agreements (the "Agreement(s)").

As it relates to SCHI, the Receiver's Complaint alleges that the loan proceeds were to be used only to purchase eligible healthcare receivables ("Eligible Accounts") or to repay the loan. The Receiver's Complaint alleges that the loan is in default because in 2004, SCHI began using the loan proceeds to purchase non-Eligible Accounts and for other non-permitted purposes. It is alleged that no written modification to the loan Agreement was ever made to allow such use of the loan proceeds, although an oral modification agreement is acknowledged in footnotes to the Receiver's Complaint. Additionally, a default is alleged to have occurred because SCHI has not made required interest payments since December 31, 2008.

A Notice of Default was delivered to SCHI on April 29, 2009, declaring the entire principal plus interest and costs immediately payable in accordance with § 8.2.3 of the Agreement. On July 7, 2009, the Receiver notified SCHI that purported consents and waivers of the terms and conditions of the written Agreement previously made on behalf of Founding Partners were revoked, withdrawn and rescinded. The Receiver's Complaint alleges that the defaults are ongoing and applicable cure periods have lapsed.

As it relates to SCI, the loan proceeds were to be used exclusively to purchase certain commercial, non-healthcare accounts receivable as part of its factoring business, or to repay the loans. The Receiver's Complaint alleges that SCI has not collected factoring fees from entities owned or controlled by its controlling individuals, has included approximately $900,000 in uncollected factoring fees as accounts receivable, is including the uncollected factoring fees in determining the Borrowing Base pursuant to its written loan Agreement, and is making additional loans to entities controlled by the controlling individuals. It further alleges that failing to collect factoring fees when due deprives SCI of income that could be used to repay the outstanding $18.5 million loans. Additionally, Stable-Value has not received interest payments on the loan since December 31, 2008.

A Notice of Default was delivered to SCI on April 29, 2009, declaring the entire principal plus interest and costs immediately payable in accordance with § 8.2.3 of the Agreement. On July 7,

2009, the Receiver notified SCI that purported consents and waivers of the terms and conditions of the written Agreement previously made on behalf of Founding Partners were revoked, withdrawn and rescinded. The Receiver's Complaint alleges that the defaults are ongoing and applicable cure periods have lapsed.

Count I of the Receiver's Complaint alleges a breach of contract as to SCHI; Count II alleges breach of contract by SCI; Count IV alleges a claim for replevin of collateral; Count V alleges a claim of foreclosure of a security interest; Counts VII and VIII allege fraudulent transfer under FLA. STAT. § 726.105; and Count IX alleges aiding and abetting breach of fiduciary duty.

On July 15, 2009, the Receiver sent Transfer Notices to SunTrust Bank ("SunTrust"), freezing two Sun Capital lockbox accounts into which payments of accounts receivable from third parties were deposited. The lockbox accounts are governed by two substantially similar Master Wholesale Lockbox Deposit and Blocked Account Service Agreements, for each of SCHI and SCI (the "Master Lockbox Agreement"), entered between Sun Capital, SunTrust, and the Lender (see Doc. #122-3, p. 5, ¶7; id. at pp. 27-38). Under the Master Lockbox Agreement, upon delivery of Transfer Notices, SunTrust must transfer all funds in the lockbox account to the Lender's (now the Receiver's) account at the end of each day, cease transferring funds to Sun Capital's collection account, and follow the directions of the Lender (Receiver) and not those of Sun Capital concerning all matters related to the accounts. The

Receiver instructed SunTrust to permanently redirect all funds flowing into those accounts to the Receiver, as the current representative of Stable-Value.

## II.

"A . . . [movant] seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). See also Johnston v. Tampa Sports Auth., 530 F.3d 1320, 1325 (11th Cir. 2008); SunTrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001). The burden of persuasion for each of the four requirements is upon the movant. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). The same standards apply to a request for a temporary restraining order. The Court finds that Sun Capital has satisfied these requirements as to a temporary restraining order.

Sun Capital asserts that it is likely to succeed on the merits. In the context of this case, that means it is likely to succeed on its position that the Transfer Notices freezing the lockbox accounts were not properly issued. Sun Capital asserts that the Transfer Notices were improper because there was no underlying default of the Agreements. The Receiver responds that no default is required to justify the issuance of the Transfer Notices because the Receiver has the unilateral right to issue them

under the Master Lockbox Agreement. The Court finds that the Receiver is mistaken.

In the Master Lockbox Agreement, Sun Capital "irrevocably directs and authorizes" SunTrust to perform certain acts[1] beginning two days after delivery of a Transfer Notice by the Receiver. (Doc. #122-3, p. 28, § 1.) Nothing in the Master Lockbox Agreement, however, indicates what can trigger the Receiver's delivery of such a Transfer Notice. The Credit and Security Agreement, however, allows the Lender to send such notices to SunTrust only following an Event of Default (Doc. #122-2, p. 62, § 8.2.4). Therefore, under the Agreement, a default is required before the Receiver may issue a Transfer Notice to SunTrust.

The Court also concludes, based upon the record submitted to the Court as to the current motion, that Sun Capital has satisfied its burden of establishing the likelihood of success on the proposition that it was not in default under the Agreement. The most serious of the alleged defaults, from the Receiver's point of view, relate to the use of the loan proceeds for purposes other than those allowed by the loan Agreements. These new uses of the loan proceeds are alleged to have increased the risks to Stable-Value's investors. The difficulty is that it appears probable that

---

[1] SunTrust agreed to transfer all funds in the lockbox account to the Lender's (now the Receiver's) account at the end of each day, cease transferring funds to Sun Capital's collection account, and follow the directions of the Lender (Receiver) and not those of Sun Capital concerning all matters related to the accounts.

the new uses were permitted by Stable-Value, and continued to be permitted until the Receiver revoked the verbal agreement two weeks ago. For example, the SEC's Complaint (Doc. #1) states that beginning in 2004, the lender "permitted" or "allowed" Sun Capital to take the steps that the Receiver now claims constitute defaults (Doc. #1, ¶ 3).

It is undisputed, however, that Sun Capital has not made interest payments in 2009. Sun Capital contends that this was due to the breach of the Agreement by Stable-Value when it refused to fund a $5 million funding request in January 2009, in violation of the Agreement. Sun Capital also asserts that after this default, Stable-Value's principal told it to stop making interest payments. It appears that these disputes will be litigated in connection with the Receiver's Complaint. Based upon what admittedly is an undeveloped record, the Court concludes that Sun Capital has satisfied its burden of proof to establish its likelihood of success as to the parties' competing claims of default.

Further, the measure of harm likely to befall the Sun Capital defendants absent the issuance of a temporary restraining order is great. The funds that the Receiver has redirected to himself were being used to operate Sun Capital's business, and Sun Capital asserts that without these funds, it will not be able to remain in operation. In addition, the funds were being used to finance the operation of twenty-one (21) hospitals with approximately one thousand (1,000) critically ill patients and approximately three

thousand five hundred (3,500) employees. Without the continued provision of funds, it is likely that at the very least, the hospitals' operations will be adversely affected (see Doc. #122-3, p. 52). The temporary agreement between the parties to allow access to funds expires today.

Additionally, the Court concludes that the balance of the equities favor granting Sun Capital some temporary relief. As noted above, Sun Capital will suffer great harm absent the issuance of a restraining order, in the form of loss of receivables owed by governmental agencies (see Doc. #122, p. 17) and potential closure of hospitals, while the Receiver will be subject to little, if any, discernable harm if a temporary restraining order is issued. Finally, the Court finds that considerations of the public interest predominate in favor of granting Sun Capital a temporary restraining order. The Receiver asserts, and the Court does not disagree, that there is a strong public interest in "upholding the rights of secured lenders to their collateral" and in the "basic enforcement of contracts." (Doc. #124, pp. 32-33.) The Court notes, however, that the nature of Sun Capital's business operations--namely, the provision of financing to acute care hospitals--raises issues of greater relative concern pertaining to patient safety, provision of medical care and supplies, closure of hospitals, and emergency evacuation of patients (see Doc. #122, pp. 16, 24-25; Doc. #122-3, p. 52), and more strongly establishes the public interest-based requirement.

Thus, the Court finds that a temporary restraining order should be granted. The Court concludes that no bond is required.

Accordingly, it is now

**ORDERED:**

1. Sun Capital Healthcare, Inc. and Sun Capital, Inc.'s Motion for Temporary Restraining Order (Doc. #122) is **GRANTED in part** to the extent that a Temporary Restraining Order shall issue separately.

2. Oral argument on the motion for preliminary injunction will be held before the undersigned on **Thursday, July 30, 2009** at **10:00 a.m.** in **Courtroom A, Sixth Floor**, of the United States Courthouse, 2110 First Street, Fort Myers, Florida.

3. The Receiver's Motion for Permission to File Response in Excess of Page Limit (Doc. #123) is **GRANTED, *nunc pro tunc***.

**DONE AND ORDERED** at Fort Myers, Florida, this   24th   day of July, 2009.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record