UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:09-CV-229-JES-CM

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

vs.

FOUNDING PARTNERS CAPITAL MANAGEMENT
and WILLIAM L. GUNLICKS,

     Defendants,

FOUNDING PARTNERS STABLE-VALUE FUND, L.P.,
FOUNDING PARTNERS STABLE-VALUE FUND II, L.P.,
FOUNDING PARTNERS GLOBAL FUND, LTD., and
FOUNDING PARTNERS HYBRID-VALUE FUND, L.P.,

     Relief Defendants.

_____/

## FINAL SETTLEMENT APPROVAL AND BAR ORDER REGARDING RECEIVER'S LITIGATION WITH MAYER BROWN LLP

Before the Court is the Motion For Approval of Settlement with Mayer Brown (D.E. 508) which seeks approval of the Proposed Notice of Settlement with Mayer Brown LLP, and to Enter the Final Settlement Approval & Bar Order (the "Motion"), filed by Daniel S. Newman (the "Receiver") in his capacities as (a) the court-appointed receiver for the Founding Partners Entities[1], and (b) the assignee of claims of certain investors in one or more Founding Partners Entities, which investors are referred to herein as "Assignors."  This Final Settlement Approval

---

[1] The "Founding Partners Entities" are Founding Partners Capital Management Company, Founding Partners Stable-Value Fund, L.P. (formerly known as Founding Partners Multi-Strategy Fund, L.P.), Founding Partners Stable-Value Fund II, L.P., Founding Partners Global Fund, Ltd., and Founding Partners Hybrid-Value Fund, L.P. (formerly known as Founding Partners Equity Fund, L.P.).

and Bar Order Regarding Receiver's Litigation With Mayer Brown LLP (hereinafter the Final Settlement Approval and Bar Order) resolves the Motion.

The Motion concerns a proposed settlement (the "Settlement") among and between the Receiver and Mayer Brown LLP ("Mayer Brown"), one of the defendants in the case filed by the Receiver in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (the "Broward Court"), that is captioned *Newman v. Ernst & Young LLP*, et al., Case No. 10-49061 (the "Litigation"). The Settlement Agreement at issue (the "Agreement") is attached as Exhibit 1 to the Motion [D.E. 508]. All capitalized terms not defined herein shall have the same meaning as set forth in the Agreement.

Following notice and a February 3, 2021 hearing at which counsel for the Receiver, for the SEC, and for Mayer Brown appeared, having considered the case filings related to the Settlement, and having heard the arguments of counsel, the Court hereby **GRANTS** the Motion, as set forth below. For the reasons set forth herein, the Court finds that the terms of the Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of the bar order sought in the Motion—and now provided herein—is both essential to the Settlement between the Receiver and Mayer Brown (the "Parties") and fair and equitable under the circumstances.

I.      **BACKGROUND, FINDINGS, & CONCLUSIONS OF LAW.**

        A.      **Background.**

On April 20, 2009, the U.S. Securities and Exchange Commission ("SEC") filed its Complaint in this action against Founding Partners Capital Management Company ("FPCM") and William L. Gunlicks ("Gunlicks"), alleging that FPCM and Gunlicks had engaged, and were engaging, in a scheme to defraud investors and violate the federal securities laws. (D.E. 1.) The

same day, the Court entered an order appointing a receiver over the Receivership Entities ("Initial Receiver"). (D.E. 9.)

The Initial Receiver was subsequently removed by Court Order on May 13, 2009 (D.E. 70), and Daniel S. Newman was appointed Replacement Receiver in the Receivership Order on May 20, 2009 (D.E. 73). The Receivership Order provides that the Receiver shall, among other things:

> (f) Defend, compromise or settle legal actions, including the instant proceeding, in which Founding Partners, any of the Founding Partners Relief Defendants, or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization of this Court . . .

(D.E. 73, ¶72(f).)

The Court also approved the Receiver's engagement of special counsel, on a contingency basis, to pursue claims against Mayer Brown LLP, which was former counsel to one or more of the Receivership Entities, and against Ernst & Young ("E&Y"), the former auditor of Receivership Entities.  (D.E. 246.)  On December 30, 2010, the Receiver, represented by Court-approved special counsel, filed the Litigation, suing Mayer Brown and E&Y for malpractice, among other claims. The lawsuit was filed in the Broward Court as Case No. 10-49061.

The Receiver and Mayer Brown have agreed to resolve the Receiver's claims against Mayer Brown in the Litigation pursuant to the terms of the proposed settlement Agreement that is attached as Exhibit 1 to the Motion (D.E. 508). The Receiver's authority to both file and settle the Litigation is derived from the Receivership Order. (D.E. 73, ¶2(f).)  Under the terms of the Agreement, Mayer Brown will pay the Receiver $390 million, with an initial payment of $370 million, and with interest on part of the deferred payments of the balance.

The Receiver has certified (D.E. 520) that Notice and copies of the Motion, including copies of the Agreement and its Exhibits, were provided to all Bar Order Parties and to all counsel

of record for any Person who was, at the time of the Notice, a party in the SEC Action or the Litigation, pursuant to this Court's Amended Preliminary Approval of Settlement and Scheduling Order ("Scheduling Order") (D.E. 514). There have been no objections to the Settlement filed in response to the Motion and Notice.

The Receiver reports in the Motion that he and his litigation counsel began communicating with the Founding Partners investors about the proposed Settlement and the terms of the Agreement, before the Agreement was completed and before the Motion was filed, in a series of telephone conference calls with dozens of investors participating in each of the conference calls. (D.E. 508 at 6.)  The overwhelming majority of the Founding Partners investors with approved Claims have expressed their support for the Settlement, including by executing written Consents to the Settlement after receiving the Notice and copies of the Motion, including copies of the Agreement and its Exhibits.  (D.E. 525.)

On October 26, 2020, the Broward Court entered an order in the Litigation, making preliminary findings, based on the terms of the proposed Settlement (including the substantial Settlement Amount), as well as that court's own knowledge of the Litigation history. In that order, attached as Exhibit 2 to the Motion, the Broward Court preliminarily concluded that the proposed Settlement was reached in good faith, and that it is a fair, adequate, and reasonable resolution of the claims that the Receiver has asserted against Mayer Brown.

**B.    Findings of Fact.**

**1.    Notice And Opportunity To Be Heard.**

The Court finds that the methodology, form, content, and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all

interested parties and all Bar Order Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Settlement Approval & Bar Order; (iv) were reasonably calculated, under the circumstances, to apprise all interested parties and all Bar Order Parties of the right to object to the Settlement and this Final Settlement Approval & Bar Order, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all interested parties and all Bar Order Parties a full and fair opportunity to be heard on these matters.

The Scheduling Order required that any person who wished to object to the terms of the Settlement or the Final Settlement Approval & Bar Order and/or to appear at the Final Approval Hearing must first file an objection in writing with the Court, no later than December 31, 2020. (D.E. 514.) No such objections were filed with the Court. Consistent with the Scheduling Order, the Court concludes that all such objections are now waived, and those who received Notice are forever barred from raising such objections in this action or any other action or proceeding.

### 2. The Settlement Is A Fair Resolution Of The Receiver's Claims.

The Receiver's Fourth Amended Complaint in the Litigation alleges causes of action against Mayer Brown for Professional Malpractice, Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting Fraud, Aiding and Abetting Breaches of Statutory Duties, Fraud, and Negligent Misrepresentation. The Receiver asserts the claims of the four Founding Partners Funds, as well as the claims of 38 investors in the Founding Partners Funds who have assigned their claims to him. The Receiver seeks damages from Mayer Brown based on the allegations in the Fourth

Amended Complaint. Mayer Brown denies these claims and has been vigorously defending against any liability or damages.

The Receiver's Fourth Amended Complaint also alleges several causes of action against E&Y. E&Y moved to compel arbitration of the Receiver's claims against it. As a result, by order of the Broward Court in the Litigation, certain arbitrable claims against E&Y are pending in arbitration proceedings, while the non-arbitrable claims against E&Y are stayed until after the arbitration concludes.

The Litigation has been hard-fought and active between the Receiver and Mayer Brown. The Receiver's Motion recites that there have been four different appeals to the Fourth District Court of Appeal, three of them concerning the claims against Mayer Brown, and extensive discovery and motion practice. He also states that the Broward Court has been asked to resolve numerous disagreements and disputes, including many discovery motions and six separate motions for partial summary judgment. He reports that four of these motions for summary judgment were decided before the Broward Court stayed the Litigation on July 16, 2020, while a motion for reconsideration of one of those partial summary judgment orders and other discovery motions were also pending when the Broward Court entered the stay. Discovery to date in the Litigation has been extensive. The Receiver reports that nearly two million documents were produced by parties and non-parties, and dozens of depositions were taken, including the depositions of many non-party witnesses.

The Receiver reports that he and Mayer Brown engaged in two formal mediations in an effort to resolve the Litigation. Neither mediation resulted in a settlement. Indeed, the Receiver and Mayer Brown returned to active and vigorous litigation for more than a year and a half after the conclusion of the second mediation. The Receiver reports that in 2020, however, discussions

among the Parties and their counsel further advanced the settlement negotiations and resulted in a settlement in principle just before the Parties sought to stay the Litigation on July 15, 2020.

When contingency counsel was retained by the Receiver, the Receiver did not have the resources or means to pursue the Litigation, except with a contingency fee arrangement. The Settlement Amount of $390 million will allow a substantial distribution to Approved Claimants after payment of approved creditor claims, fees and costs, and litigation reserves. The Receiver has estimated that if the Settlement were not approved, the Receivership Estate would incur significant additional cost in continued litigation against Mayer Brown, including millions of dollars of costs for expert witnesses, dozens of additional depositions and related travel expenses, and other litigation-related costs.

While the Receiver's agreement with his contingency counsel provides that counsel is to receive the same percentage of the recovery whether the matter is settled or goes to trial, there can be no guarantee of any result or recovery through a trial. Moreover, the agreement provides that contingency counsel's percentage increases from 33.3% to 40% if there is an appeal post-trial, and the Receiver has stated that there is a strong possibility of a post-trial appeal, no matter who prevailed at trial. The Receiver recommends approval of the Settlement as the best outcome for the Receivership Estate, including investors, and states that the process of reaching the proposed Agreement was fair, well-informed, and well-advised by the Receiver's retained professionals.

The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and active litigation of claims and defenses, and that it resulted from vigorous, good-faith, arm's-length negotiations involving experienced and competent counsel representing both Parties, including two formal mediations conducted over a period of years. The Court further finds that (i) significant issues exist as to the

merits and value of the claims asserted against Mayer Brown by the Receiver; (ii) such claims raise complex and difficult issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) absent Settlement with Mayer Brown, a significant risk exists that future litigation costs would dissipate assets of the Receivership Estate and that the Receiver would not ultimately prevail on his claims; (iv) the Settlement provides value to the Receivership Estate, and through payment and distribution of the Settlement Amount, those who have filed approved Claims against the Receivership Estate, will recover on the claims asserted against Mayer Brown in the Litigation; and (v) Mayer Brown would not have agreed to the terms of the Settlement in the absence of the portions of this Final Settlement Approval & Bar Order that will preclude any further litigation with respect to all claims that have been, or could be, asserted against the Mayer Brown Released Parties that arise out of or relate to these proceedings, the Litigation, or any allegation made therein, as described more fully below.  *See SEC v. Kaleta,* No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary), *aff'd,* 530 F. App'x 360 (5th Cir. 2013); *accord Zacarias v. Stanford Int'l Bank, Ltd.,* 945 F.2d 883, 904 (5th Cir. 2019) (addressing similar factors in approving bar order); *SEC v. DeYoung,* 850 F.3d 1172, 1182-83 (10th Cir. 2017).

### 3.      The Requested Bar Order Is Necessary And Appropriate.

One of the essential conditions of the Settlement Agreement is the entry by this Court of a bar order (the "Bar Order") preventing the Receiver and the Receivership Entities, as well as certain other persons or entities (the "Bar Order Parties," defined more fully in the Agreement), from asserting claims against Mayer Brown that arise from or relate to Mayer Brown's alleged

conduct or prior dealings with the Receivership Entities, including all Settled Claims, as set forth more fully in the Agreement and its Exhibit D.  Such claims include, without limitation, claims:

> (i)  based in whole or in part upon any allegation made by the Receiver against Mayer Brown in the Litigation, or relating to Mayer Brown's alleged conduct respecting the Receivership Entities; or
>
> (ii) based in whole or in part on any allegation that any Bar Order Party has the right to contribution or indemnity from Mayer Brown respecting any loss or damages arising from or relating to any of Mayer Brown's alleged conduct or prior dealings with the Receivership Entities.

The Agreement expressly states that Mayer Brown "is not willing to agree to the Settlement or th[e] Agreement (including its requirement for the payment of the very substantial Settlement Amount) without the assurance of 'total peace' in relation to the Settled Claims," and that the proposed Bar Order is "necessary to provide Mayer Brown and the Mayer Brown Released Parties such 'total peace.'" (D.E. 508 at Ex. 1, Agreement ¶ 41.) As represented in the Motion and at the Final Approval Hearing, there would be no Settlement—or the payment of the Settlement Amount—without the Bar Order.  This is reflected in the Agreement itself; the Parties represent that the Bar Order is "a necessary condition of their Settlement." (*Id.*) As a result, the entry of this Final Settlement Approval & Bar Order (and such order having become "Final") is one of the express Conditions that must be achieved before the "Settlement Effective Date" arises and Mayer Brown becomes obligated to pay the Settlement Amount. (*Id.* ¶¶ 23, 27.)

The Bar Order also expressly provides that, "Notwithstanding anything herein or in the Settlement Agreement to the contrary, this Bar Order shall not apply to any federal, state, or local governmental agency, including but not limited to the Securities and Exchange Commission."  The Court finds that entry of the Bar Order will not interfere with the regulatory or other enforcement

authority of any government agency. The SEC has indicated that it does not oppose the Motion or any of the relief sought by the Receiver in the Motion, including entry of the Bar Order.

Therefore, the Court finds entry of the Bar Order is essential to the Settlement and that no Settlement would exist without it.  Entry of the Bar Order, and its having become Final as provided in the Agreement, is an essential condition of the Receiver's and Mayer Brown's agreement to settle the Receiver's claims and for Mayer Brown's obligation to pay the Settlement Amount. If the requested Bar Order is entered, the Bar Order Parties will be prohibited from asserting against Mayer Brown or any of the Mayer Brown Released Parties any claim that in any way relates to, is based upon, arises from, or is connected with the Founding Partners Entities or William L. Gunlicks; this case or its subject matter; the Litigation or its subject matter; or any Settled Claim. If the requested Bar Order is not entered, however, the termination provisions in the Settlement Agreement will apply. (D.E. 508 at Ex. 1, Agreement ¶¶ 48-50.)

The injunction against such claims as are precluded by the Bar Order as set forth below in Part II is therefore a necessary and appropriate order to effectuate the relief obtained pursuant to the Settlement, for the benefit of the Receivership Estate and the Approved Claimants. *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding). This Court's "powers include orders preventing interference with its administration of the receivership property," and "Courts of Appeals have upheld orders enjoining broad classes of individuals from taking any action regarding receivership property." *Zacarias*, 945 F.2d at 896-97.  Such orders "can include both stays of claims in other courts against the receivership and bar orders foreclosing suit against third-party defendants with whom the receiver is also engaged in litigation." *Id.* at 897.

The Court also finds that entry of the Bar Order is fair and equitable under the circumstances. <u>First</u>, the Bar Order addresses claims that are so closely related to the Receiver's claims that barring such claims is consistent with the appropriate and efficient administration of the Receivership Estate. <u>Second</u>, although it is possible that the claims to be precluded by the Bar Order are time-barred or subject to other defenses, the Court finds that it is appropriate to enter the Bar Order to give Mayer Brown the required assurance that it will not be subject to further litigation involving the Settled Claims. In consideration of the very substantial Settlement Amount that Mayer Brown has agreed to pay pursuant to the Settlement Agreement's terms, it is appropriate that Mayer Brown should be protected against, and not required to defend, even stale or otherwise deficient claims.

The Court also specifically finds that it is fair and appropriate to bar the Settled Claims of the persons and entities that fall within the definition of "Bar Order Parties":

1.  The Receiver, the Receivership Estate, and the Receivership Entities are appropriately barred from asserting claims against the Mayer Brown Released Parties because the Receiver brought all such claims belonging to the Receivership Estate or the Receivership Entities in the Litigation. These claims are resolved and released pursuant to the proposed Agreement.

2.  The Assignors are all investors who hold (or held) approved claims in the Receivership Estate (meaning they are a subset of those who are Approved Claimants, described below). The Assignors assigned their claims against Mayer Brown and E&Y to the Receiver so that the Receiver could assert them in the Litigation for the benefit of the Receivership Estate. The Assignors' assigned claims are resolved and released pursuant to the proposed Agreement. In addition, the benefits of the proposed Settlement will accrue to all Approved Claimants, including the Assignors or their successors in interest. It is therefore appropriate that the Assignors be barred

from pursuing claims against the Mayer Brown Released Parties relating to the allegations in the Litigation.  None of the Assignors has objected to the Settlement or Bar Order.

3.      Approved Claimants are also appropriately barred from pursuing claims against the Mayer Brown Released Parties. With the approval of this Court, the Receiver advised investors in 2012 that if they wished to assert any claim against the Receivership Estate, they were required to submit such claim to the Receiver in the claims process. (D.E. 338, 339.) "Approved Claimants" are all persons or entities who submitted claims to the Receiver in the claims process, which the Receiver determined, and the Court agreed, should be approved. (D.E. 430.) Each Approved Claimant's claim amount is reflected as an "Allowed Amount" on the Revised Schedule A the Receiver filed with the Court. (D.E. 417-5.)  Approved Claimants are the principal beneficiaries of the proposed Settlement Agreement with Mayer Brown, and it is appropriate that those who benefit from the proposed Settlement Agreement should also be barred from pursuing claims against the Mayer Brown Released Parties.  No Approved Claimant has objected to the Settlement or Bar Order.

4.      It is also appropriate to bar Unapproved Claimants from pursuing claims against the Mayer Brown Released Parties.  Unapproved Claimants are those who submitted claims in the claims process, but whose claims were rejected by the Receiver and the Court. Although such Unapproved Claimants will not recover under the proposed Settlement, they had the opportunity to make claims against the Receivership Estate, those claims were rejected, and the rejections are now final.  It is appropriate to bar these Unapproved Claimants from asserting claims against the Mayer Brown Released Parties because any effort by the Unapproved Claimants to assert such claims at this time would necessarily interfere with the Receiver's ability to settle the claims belonging to the Receivership Estate, and would undermine the authority of the Receiver and of

this Court to administer the Receivership Estate pursuant to the orderly process for allowing and disallowing claims approved by this Court in 2012.  None of the Unapproved Claimants has objected to the Settlement or Bar Order.[2]

5.      It is also appropriate that the Bar Order bar potential claims by E&Y against the Mayer Brown Released Parties.  E&Y is the only co-defendant to Mayer Brown in the Litigation. The Receiver's Fourth Amended Complaint alleges causes of action against E&Y for professional malpractice, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, aiding and abetting breaches of statutory duties, fraud, and negligent misrepresentation.  E&Y will not recover under the proposed Settlement.  However, the requested Bar Order and the proposed Final Judgment Order to be entered in the Litigation (Exhibit E to the Agreement) provide that, with respect to any judgment or award that might be entered against E&Y on any cause of action or claim in the Litigation, or in the Receiver's arbitrations against E&Y, E&Y shall receive any credit or offset to which it may be entitled as a result of the Settlement, if and to the extent provided by any applicable statute, code, or rule of law. (D.E. 508 at Ex. 1, Agreement ¶¶ 72-73.) The Agreement does not impair E&Y's ability to seek such a credit or offset under Florida or any other applicable law; in fact, it expressly affirms E&Y's right to seek an appropriate credit or offset as provided by law. In either case, and also by virtue of the separate release agreement executed by Mayer Brown and E&Y (Exhibit H to the Agreement), the requested Bar Order does not deprive

---

[2]  The Court has recently been advised that Founding Partners Investor Claimants 4, 5, and 6, listed in Exhibit A to the Motion for Court Approval of the Receiver's Recommendations Concerning Claims and Proposed Objection Schedule, filed on January 25, 2021 (D.E. 521), have filed late claims with the Receiver, and have acknowledged in writing that they agree to be included in the definition of "Approved Claimants" or "Unapproved Claimants" as those terms are defined in the Agreement between the Receiver and Mayer Brown, and that they will be bound by the Bar Order. By filing their claims with the Receiver, those Investor Claimants have submitted themselves to the jurisdiction of this Court, *Alexander v. Hillman,* 296 U.S. 222, 238 (1935) and, by their agreement, will also be considered "Approved Claimants" or "Unapproved Claimants" (as their claims may ultimately be decided), as well as "Bar Order Parties," who are subject to and included within the Bar Order.

E&Y of any claim or benefit it would otherwise be entitled to assert under the law. E&Y does not object to the Settlement or the Bar Order.

6.      It is also appropriate to bar persons associated with Founding Partners entities (category 8 in the Agreement's defined term "Bar Order Parties") from asserting claims against the Mayer Brown Released Parties. This category includes those who were identified as having had some role in the pre-Receivership management and decision-making of FPCM or Founding Partners Global Fund, Ltd., including with respect to the investment decisions of the Founding Partners Funds. These Bar Order Parties are appropriately barred from pursuing claims against the Mayer Brown Released Parties relating to the allegations in the Litigation, because any such claims they might have may be untimely and barred by limitations and, in all events, necessarily arise from and are related to the claims belonging to the Receivership Estate that were prosecuted by—and are now being settled by—the Receiver.  None of the listed persons associated with Founding Partners Entities has objected to the Settlement or Bar Order.  The Court also makes the following findings as to specific persons associated with the Founding Partners Entities:

- William L. Gunlicks and William V. Gunlicks are appropriately barred from pursuing any other claims against Mayer Brown for several reasons. Williams L. Gunlicks was the President of FPCM; William V. Gunlicks is his son and was employed at FPCM beginning no later than 2006 and continuing through to April 2009, including a substantial part of the period when the fraud alleged by the SEC in this proceeding was occurring. At one time, both were parties to an action filed in September 2010 against Mayer Brown, two of its then-current partners, and E&Y in Cook County, Illinois (captioned *Nissa Cox, et al. v. Mayer Brown LLP*, et al., No. 2010 L 10503, hereafter the "Gunlicks Action"). William L. Gunlicks' claims were eventually dismissed without further leave to amend, with the

dismissal affirmed on appeal on August 19, 2014. William V. Gunlicks withdrew as a plaintiff from the litigation in 2012, before his father's claims were dismissed with prejudice. At that time, the Receiver partially joined with Mayer Brown in moving to dismiss the Gunlicks Action because the plaintiffs were asserting claims that properly belonged to the Receiver and the Receivership Estate. Any claim these individuals may have that the Bar Order would preclude would of necessity arise out of the same facts as the claims belonging to the Receiver and the Receivership Estate. Therefore, such claims are wholly "interrelated" with the claims of the Receiver and appropriately barred in order to protect the Receiver's and this Court's ability to manage the assets and claims belonging to the Receivership Estate. *See In re Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996). Neither William L. Gunlicks nor William V. Gunlicks has objected to the Settlement or the Bar Order.

- Philip Fues and Chris Bowers are Approved Claimants and will be barred as such for the reasons provided above. To the extent that they might have had any claims against Mayer Brown not arising from their investments, but arising from work they did while they were working at FPCM or otherwise on behalf of the Receivership Entities, those claims would properly belong to the Receivership Entities for which they were working at the time. Those claims belong to the Receiver and are being settled in the proposed Agreement. Neither Philip Fues nor Chris Bowers has objected to the Settlement or the Bar Order.

- Judy Aller was an investor but testified in the Litigation that she made a deliberate decision not to submit an investor claim against the Receivership Estate. Like Philip Fues and Chris Bowers, she also worked at FPCM. To the extent she might have had an investor claim against Mayer Brown relating to her investment in the Receivership Entities, she has never

asserted such a claim in the more than ten years since the Receiver was appointed. To the extent that she might have had any claims against Mayer Brown not arising from her own investments, but arising from work she did at FPCM or otherwise on behalf of the Receivership Entities, those claims would properly belong to the Receivership Entities for which she was working at the time. Those claims belong to the Receiver and are being settled in the proposed Agreement. Ms. Aller has not objected to the Settlement or the Bar Order.

- Robb Baldwin, William Hart, Barry Preston, David Teets, Kermit Claytor, and Stephen Dickson were all identified as persons who may have had some other pre-Receivership relationship which involved advice to Gunlicks, FPCM, or other Receivership Entities, including (in some cases) review or advice with respect to the management or structure of the Founding Partners Funds and their investment strategy or investment decisions. To the extent any one of these individuals might have had claims against Mayer Brown not arising from investments, but arising from work they did on behalf of the Receivership Entities, those claims would properly belong to the Receivership Entities. Those claims belong to the Receiver and are being settled in the proposed Agreement. None of these individuals has commenced any action to assert claims against Mayer Brown in the more than ten years since the Receiver was appointed. Moreover, any claim these individuals may have that the Bar Order would preclude would of necessity arise out of the same facts as the claims belonging to the Receiver and the Receivership Estate. Therefore, such claims are wholly "interrelated" with the claims of the Receiver and appropriately barred in order to protect the Receiver's and this Court's ability to manage the assets and claims belonging to the Receivership Estate. *See In re Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996).  Robb

Baldwin, William Hart, Barry Preston, David Teets, Kermit Claytor, and Stephen Dickson have not objected to the Settlement or the Bar Order.

7.     The Court also finds that the Gunlicks Children and their Trusts are appropriately barred from pursuing claims against any of the Mayer Brown Released Parties. The Receiver reports that, on September 9, 2010, each of William L. Gunlicks' adult children – Nissa Cox, individually, and as a minority shareholder of FPCM, and suing under Trust Number 61-6357311; Annalee Good, individually, and as a minority shareholder of FPCM, and suing under Trust Number 6-6357312; and William V. Gunlicks, individually, and as minority shareholder of FPCM, and suing under Trust Number 61-6357313, collectively, the "Children and Trusts" – filed the Gunlicks Action against Mayer Brown and E&Y in Cook County, Illinois. The Children and Trusts alleged, among other things, that Gunlicks and the Children and Trusts relied upon the advice and counsel of Mayer Brown, and were the direct or third-party beneficiaries of Mayer Brown's alleged agreement to represent FPCM as "compliance counsel." William L. Gunlicks later joined the Gunlicks Action as an additional plaintiff.  The Gunlicks Children and their Trusts eventually dropped their claims, while William L. Gunlicks' claims were dismissed with prejudice, and the dismissal was affirmed on appeal.  If any of the Children and Trusts still have a claim against Mayer Brown that the Bar Order would preclude, and that is not time-barred, such claim would of necessity arise out of Mayer Brown's work for FPCM (one of the Receivership Entities) and from the same facts forming the basis of the Receiver's claims. Any such claims are "interrelated" with the Receiver's claims, and are appropriately barred.  The Children and Trusts have not objected to the Settlement or the Bar Order.

     **C.**    **Conclusions of Law.**

          **1.**    **The Settlement Is Fair And In The Best Interests Of The Receivership Estate.**

Based on the factual findings set forth above, the Court finds that the Settlement is a fair, adequate, and reasonable resolution of the Receiver's causes of action against Mayer Brown, and the Settlement in the best interests of the Receivership Estate.  The ultimate inquiry in assessing a proposed receivership settlement is whether "the proposed settlement is fair." *Sterling v. Stewart*, 158 F. 3d 1199, 1203 (11th Cir. 1998); *see In re Consol. Pinnacle West Sec. Litig./Resolution Trust Corp.-Merabank Litig.,* 51 F.3d 194, 196-97 (9th Cir. 1995) ("We see no reason to upset the court's conclusion that the settlement process and result were fair."). "Determining the fairness of [a] settlement is left to the sound discretion of the trial court." *Sterling,* 158 F.3d at 1202.

The Receiver and Mayer Brown have actively litigated the Litigation for over 10 years. The Receiver believes that continued litigation, with no guarantee of success, is not in the best interest of the Receivership Estate. The Settlement Amount to be paid by Mayer Brown is very substantial.  The trial court in the Litigation has already entered preliminary findings concluding that the proposed Settlement is fair, adequate, and reasonable, and that it was entered into in good faith. (D.E. 508 at Ex. 2, Broward Preliminary Order.)

In making its own determination of fairness, this Court can appropriately give weight to the Broward Court's findings, in addition to the following factors: (1) the likelihood of success on the merits; (2) the range of possible recovery; (3) the point on or below the range of recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Sterling,* 158 F. 3d at 1204. *See also SEC v. Princeton Economic Int'l,* 2002 WL 206990, *2 (S.D.N.Y. 2002) (receivership court should consider "various factors including, inter alia: (1) the probable validity of the claim; (2) the apparent difficulties attending its enforcement through the courts; (3) the collectability of the

judgment thereafter; (4) the delay and expenses of the litigation to be incurred; and (5) the amount involved in the compromise").[3]

The Court concludes these factors warrant approval of the proposed Settlement. First, the trial court has already made preliminary findings regarding the fairness, adequacy, and reasonableness of the proposed Settlement, and those findings reflect the trial court's perspective in supervising and managing the Litigation. (D.E. 508, at Ex. 2, Broward Preliminary Order.) This Court agrees with those preliminary findings from the Broward Court. Second, the litigation has been hard fought, and no outcome is guaranteed. Third, while time-consuming and expensive discovery remains to be taken, the Parties have conducted enough discovery to make well-informed decisions at this stage. Fourth, the Agreement provides for payment of a substantial amount of funds. Fifth, no objections to the Settlement have been filed with the Court.

The Court agrees with the Receiver's assessment concerning the proposed Settlement and concludes that the Settlement is fair and in the best interests of the Receivership Estate, as the negotiated outcome for the Receivership Entities under the Agreement provides for a substantial recovery and overall is better than the risk, uncertainty, and expense of further litigation.

**2.      Entry of the Bar Order is Necessary and Appropriate.**

This Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership." *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992).  That includes authority to enter the Bar Order.  *See Zacarias v. Stanford Int'l Bank, Ltd.,* 945 F.2d 883 (5th Cir.

---

[3]   The District Court in *Gordon v. Dadante* "analyze[d] the settlement as a whole, under the totality of the circumstances." 2008 U.S. Dist. LEXIS 32281, *39, 48 (N.D. Ohio April 18, 2008). The Sixth Circuit affirmed, finding that the district court had fulfilled its responsibilities by engaging in an "independent analysis of the settlement," as "the district court had extensive knowledge of the claims involved in the case, the valuation of those claims, and the nature of the settlement," and thus "had more than sufficient information to assess the fairness of the settlement proposed." 2009 U.S. App. LEXIS 15517 at **16, 23. As the district court noted in a later approval proceeding, "the courts must recognize that plans relating to settlement of a receivership are inherently imperfect," "because no proposal can be [perfect]," and the "task at hand, however, is to do justice to the extent possible." *Gordon v. Dadante,* 2010 U.S. Dist. LEXIS 1979, *13-14 (N.D. Ohio Jan. 11, 2010).

2019) (affirming district court's bar order in receivership proceeding); *SEC v. DeYoung,* 850 F.3d

1172 (10th Cir. 2017) (same).  The Court has jurisdiction over the subject matter of this action,

and the Receiver is the proper party to seek entry of the Bar Order.

      The Receiver's and the Court's ability to manage the Receivership Estate, and to settle

claims belonging to the Receivership Estate, depend upon their ability to provide full and effective

releases in consideration for the Settlement Amount.  The Agreement contemplates entry of the

Bar Order to provide such full and effective releases.  A bar order is a form of relief, often sought

by a party to a settlement, that "extinguishes extraneous claims against the settling party, tying up

the settling party's loose ends and encouraging resolution in complex cases that could otherwise

span years." *SEC v. Quiros,* 966 F.3d 1195, 1199 (11th Cir. 2020).[4]

      This Circuit uses a two-part inquiry to determine whether entry of a bar order is

appropriate:  (1) the court must conclude that the bar order is essential to the settlement; and (2) the

court must decide that the bar order is fair and equitable, with an eye toward its effect on the barred

parties. *Quiros,* 966 F.3d at 1199 (citing *In re Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996)).

      A bar order is "essential" if it is integral to the proposed settlement agreement. *See Quiros,*

at 1199-200 (holding that a bar order is essential when it is integral to settlement and the settling

defendant would not have entered into the settlement in the absence of such bar order). Stated

differently, "[i]f the parties would have still resolved their dispute without entry of the bar order,

the order is not essential and the court should not enter it." *Quiros,* 966 F.3d at 1200; *see also In*

*re Jiangbo Pharm., Inc.,* 520 B.R. 316, 323 (Bankr. S.D. Fla. 2014) ("The evidence before the

---

[4] It is appropriate to use bar orders to facilitate such settlements. *See Quiros,* 966 F.3d at 1200; *Newby v. Enron Corp.,* 302 F.3d 295, 300 (5th Cir. 2002) (affirming order enjoining "any new Enron-related actions" without first obtaining permission from the district court); *SEC v. Wencke,* 622 F.2d 1363, 1369 (9th Cir. 1980) (barring state court proceedings in a securities fraud case, and affirming district court's "inherent equitable authority" to issue "ancillary relief" measures, including injunctions to stay proceedings by non-parties).

Court shows that the Bar Order is an integral part of the Amended Settlement without which it would not be consummated."), *aff'd sub nom. Brophy v. Salkin,* 550 B.R. 595 (S.D. Fla. 2015); *In re Rothstein Rosenfeldt Adler, P.A.,* No. 09-34791-BKC, 2010 WL 3743885, at *6 (Bankr. S.D. Fla. 2010) (finding that a bar order was essential because the trustee "testified that without a bar order, the Settling Parties would not have had entered into the Settlement").

Here, the Court finds that the Bar Order is essential to the proposed Settlement Agreement. The Settlement Agreement itself states that it is so. (D.E. 508, at Ex. 1, Agreement ¶ 41.) Mayer Brown's agreement to the Settlement is expressly conditioned on entry of the Bar Order (and such order having become Final), and – as the Parties have agreed – the Settlement Agreement is not effective without it. (*See id.* ¶¶ 23, 27, 41.)

In considering whether a proposed bar order is fair and equitable, courts consider the so-called "*Munford* factors," which include: (1) the non-debtor third-party claims which will be barred are "interrelated" with the estate's claims; (2) the likelihood of non-settling defendants to prevail on barred claims; (3) the estate's litigation against the beneficiary of the bar order is complex; and (4) the continued litigation by the estate and other parties against the beneficiary of the bar order will deplete resources. *See Munford*, 97 F.3d at 455.

The Court has considered these factors, among others, and finds the proposed Bar Order is also a fair and equitable term of and condition to the proposed Agreement. As explained above, this is an extraordinarily complex case, continued litigation will only deplete resources, there is a strong likelihood that any potential claims affected by the Bar Order are barred by the statute of limitations, and in all events, the claims to be barred appear wholly interrelated with the Receiver's claims. The Parties have agreed, after extensive litigation and good-faith settlement negotiations, to include the Bar Order as an essential Condition of the Agreement, as consideration for Mayer

Brown's willingness to pay the very substantial Settlement Amount. Moreover, the Agreement itself, of which the Bar Order is a necessary component, is a fair and equitable resolution of this matter that is in the best interests of the Receivership Estate, as described above. None of the Bar Order Parties has objected to the Settlement or the Bar Order.

### 4.      Entry of Final Judgment Pursuant To Rule 54(b).

The Receiver requests that the Court's order approving the Settlement Agreement and entering the Bar Order also include Rule 54(b) partial judgment findings. (D.E. 508, at Ex. 1, Agreement ¶ 6 (definition of "Final" includes Rule 54(b) findings) and Exhibit D to Agreement at Section III.D (setting out proposed Rule 54(b) findings).)

Rule 54(b) provides that a district court may enter final judgment on a single claim in an action with multiple claims "if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

The Eleventh Circuit's two-part test for certification under Rule 54(b) is set forth in *Lloyd Noland Foundation, Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 778 (11th Cir. 2007). First, the Court must determine its decision is both final and a judgment, such that it disposes of a separable claim or dismisses a party in its entirety. *Lloyd Noland*, 483 F.3d at 779. Second, the Court must determine "there is no just reason for delay" in certifying its decision as final. *Id.* at 778.

The Court concludes that this Final Settlement Approval & Bar Order satisfies the first part of the two-part test set forth in *Lloyd Noland* because it is a partial judgment within the meaning of Rule 54(b).  As set forth below, this Final Settlement Approval & Bar Order is "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief," and it is "'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims

action." *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 7 (1980).  A "claim" under Rule 54(b) is "the aggregate of operative facts which give rise to a right enforceable in the courts even if the party has raised different theories of relief." *Planned Parenthood Sw. Ohio Region v. DeWine l,* 696 F.3d 490, 500 (6th Cir. 2012); *accord Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 418 (2d Cir. 1989) (applying same test and noting, "[w]hen the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court[,] the certified claims may be considered separate claims under Rule 54(b)").

First, this is a "decision upon a cognizable claim for relief." *See Curtiss–Wright,* 446 U.S. at 7.  "Claim" in this context does not necessarily mean a "cause of action." *See SEC v. Cap. Consultants, LLC,* 453 F.3d 1166 (9th Cir. 2006) (orders governing distribution plans in receivership were appealable upon district court's Rule 54(b) certification); *Liberte Cap. Grp., LLC v. Capwill,* 148 F. App'x 426, 432 (6th Cir. 2005) (unpublished) (Rule 54(b) certification proper for order in receivership providing for manner of distribution of receivership assets).  It is enough that this Final Settlement Approval & Bar Order effectively resolves the Receiver's claims against Mayer Brown, which claims are an asset of the Receivership Estate that this Court is charged with overseeing, even though the Receiver's Litigation against Mayer Brown is pending in a different court.  For example, on April 4, 2019, the United States District Court for the Southern District of Florida entered an order approving a settlement agreement in *SEC v. Quiros,* No. 16-cv-21301-GAYLES, 2019 U.S. Dist. LEXIS 232402 (S.D. Fla., April 4, 2019). There, the receiver was settling an insurance coverage action in which he had been allowed to intervene, as well as all claims by the receivership entities for coverage under the relevant insurance policies. The district court included Rule 54(b) findings even though the causes of action the receiver was settling were pending in a different court, as is the case here with the Litigation. *See also SEC v.*

*DeYoung,* 850 F.3d 1172, 1179 (10th Cir. 2017) (affirming entry of settlement approval and bar order, with Rule 54(b) findings, where there was no action pending in any court).

Second, this judgment is "'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *See Curtiss–Wright,* 446 U.S. at 7. The Receiver is asserting against Mayer Brown claims that belong to parties to the Receivership proceeding (the Founding Partners Funds), and the claims are an asset of the Receivership Estate. If the Court approves the Agreement and enters the Bar Order, that will fix and fully resolve the value of that asset to the Receivership Estate, and there will be nothing left for the Court to do with respect to the claims against Mayer Brown besides approve the distribution of the proceeds of the Settlement Amount to Approved Claimants. *See Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1111-12 (9th Cir. 1999) (court order requiring turnover of assets to receiver was final decision appealable with Rule 54(b) certification because it resolved the parties' rights to the assets in question); *Wachovia Bank, Nat'l Assoc.,* No. 04-20834, 2009 WL 10669111, at *5 (S.D. Fla. May 14, 2009) (court entered Rule 54(b) findings for judgment concerning ownership of funds that were part of interpleader action in receivership proceeding). In addition, the Court's order approving the Agreement will effectively resolve the Receiver's claims against Mayer Brown in the Litigation, because this Final Settlement Approval & Bar Order gives the Receiver permission to obtain the dismissal of those claims and thereby to fully and finally resolve the Mayer Brown portion of the Litigation.

Third, this Final Settlement Approval & Bar Order is entirely separable from the other claims and aspects of the Receivership that will remain pending. For example, as discussed above, the Receiver's litigation and arbitration proceedings against E&Y will continue, notwithstanding

the Settlement with Mayer Brown and entry of the Bar Order, and the Receiver will continue to report to this Court with respect to the status of the E&Y proceedings.

The Court also finds that this Final Settlement Approval & Bar Order satisfies the second part of the two-part test set forth in *Lloyd Noland* because there is no just reason for delay in entering this judgment as a final judgment. In both his Motion and at the Final Approval Hearing, the Receiver cited several receivership cases where district courts approved settlement agreements and made Rule 54(b) findings. In at least two of those cases, the district courts found equity was furthered by preventing delay. *See S.E.C. v. American Pension Serv., Inc.*, 2015 WL 12860498, *13 (D. Utah, December 23, 2015) (making Rule 54(b) certification and finding "not only is there no reason for delay, but the expediency and efficiency of the administration of this Receivership Estate will be furthered" by certification under Rule 54(b)); *S.E.C. v. Alleca*, 2016 WL 2858847, *2 (N.D. Ga., May 16, 2016) (certifying approval of settlement under Rule 54(b) to prevent delays in a receiver collecting and distributing settlement proceeds). The Court agrees and similarly finds that equity is furthered by preventing delay in this case. Among other things, without Rule 54(b) findings that will allow this Final Settlement Approval & Bar Order to become Final, the Settlement will not take effect, if at all, until some unknown future date, and Mayer Brown would not be obligated to pay the Settlement Amount until such time as this Final Settlement Approval & Bar Order became Final. Thus, a lack of Rule 54(b) findings will delay a substantial distribution of the Settlement Amount, after payment of approved creditor claims, fees and costs, and litigation reserves, to the Approved Claimants. That fact counsels strongly in favor of certifying this order as a partial final judgment under Rule 54(b).

For all these reasons, the Court finds and concludes that there is no just reason to delay entry of this Final Settlement Approval & Bar Order as a final judgment, and that this Final Settlement Approval & Bar Order shall be and is a partial final judgment pursuant to Rule 54(b).

According, based on the above findings of fact and conclusions of law, it is now

**ORDERED:**

(1) The Receiver's Motion For Approval of Settlement Agreement With Mayer Brown (D.E. 508) is **GRANTED.**

(2) **Release of Mayer Brown Released Parties:**  Consistent with Paragraph 55 of the Agreement, and as of the Settlement Effective Date, Mayer Brown and the rest of the Mayer Brown Released Parties[5] shall be completely released, acquitted, and forever discharged by all Bar Order Parties[6] from the following ("Settled Claims"): any and all

---

[5] "Mayer Brown Released Parties" means Mayer Brown, Mayer Brown LLP, Mayer Brown (a Hong Kong partnership), Mayer Brown (Beijing) Intellectual Property Agency Co. Ltd., Mayer Brown (Singapore) Pte. Limited (No.201114070Z), Mayer Brown (Thailand) Limited, Mayer Brown (Vietnam) LLC, Mayer Brown Beijing Representative Office, HK, Mayer Brown Consulting (Singapore) Pte. Ltd. (No.201407965N), Mayer Brown Europe-Brussels LLP, Mayer Brown Gaikokuho Jimu Bengoshi Jimusho (GJBJ), Mayer Brown International LLP, Mayer Brown Mexico S.C. (a State of Durango Sociedad Civil), Mayer Brown Shanghai Representative Office (Hong Kong), Mayer Brown, a French Corporation (SELAS), Tauil & Chequer Advogados — Brasília, Tauil e Chequer Advogados — Rio de Janeiro, Tauil e Chequer Advogados (Vitoria), and Tauil e Chequer Sociedade de Advogados (São Paulo), as well as all of their respective present and former partners, limited partners, general partners, parents, officers, directors, employees, legal and equitable owners, trustees, shareholders, members, managers, principals, agents, attorneys, legal representatives, affiliated persons or entities, owners, predecessors, successors, beneficiaries, assigns, heirs, executors, administrators, lenders, indemnitors, direct and indirect parents, subsidiaries, affiliates, and beneficially owned entities conducting business for or providing services to any of them. "Mayer Brown Released Parties" shall also include the insurers and reinsurers of any of the foregoing, solely in their capacities as insurers or reinsurers of such entities with respect to the Settled Claims. For the avoidance of doubt, "Mayer Brown Released Parties" does not include Ernst & Young LLP or any other Person, besides Mayer Brown or its counsel in the Litigation, against whom the Receiver, before the Agreement Date, has provided written notice to Litigation counsel for Mayer Brown that he has filed a claim or cause of action that remains pending in any Forum.

[6] "Bar Order Parties" means (1) the Receiver; (2) the Receivership Estate; (3) the Founding Partners Entities; (4) the Assignors; (5) the Approved Claimants; (6) the Unapproved Claimants; (7) Ernst & Young LLP; (8) the following Founding Partners Capital Management Company ("FPCM") employees or personnel associated with FPCM and/or the Founding Partners Entities: Gunlicks, Judy Aller, William V. Gunlicks, Philip Fues, Chris Bowers, Robb Baldwin, William Hart, Barry Preston, David Teets, Kermit Claytor, and Stephen Dickson; and (9) the following individuals and trusts associated with Gunlicks: James B. Gunlicks; Nissa Cox; Annalee Good; the William L. Gunlicks Irrevocable Trust f/b/o Nissa Cox; the William L. Gunlicks Irrevocable Trust f/b/o Annalee Good; and the William L. Gunlicks Irrevocable Trust f/b/o of William V. Gunlicks. The inclusion of any particular Person within the definition of "Bar Order Parties" for the purposes of the Agreement does not necessarily mean that such Person has an interest

actions, causes of action, suits, liabilities, claims, rights of action, rights of levy or attachment, or demands whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that such Bar Order Party ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with:

(i)     any of the conduct complained of in the SEC Action or the Litigation;

(ii)    any of the Founding Partners Entities;

(iii)   any account or investment of any type with or related to any one or more of the Founding Partners Entities;

(iv)    Mayer Brown's relationship with, services for, or conduct with respect to any one or more of the Founding Partners Entities and/or any of their personnel, including but not limited to Gunlicks;

(v)     Mayer Brown's provision of services to or for the benefit of or on behalf of any one or more of the Founding Partners Entities and/or any of their personnel, including but not limited to Gunlicks;

(vi)    Mayer Brown's relationship with, services for, or conduct with respect to MasterFactor, Inc. and/or any of its personnel, or Mayer Brown's provision of services to or for the benefit of or on behalf of MasterFactor, Inc.;

(vii)   any investment, loan, transfer, statement, or other decision, conduct, or omission by any of the Founding Partners Entities and/or any of their personnel, including but not limited to Gunlicks;

(viii)  any conduct or omission by Sun Capital, Inc., Sun Capital Healthcare, Inc., Promise Healthcare, Inc., Success Healthcare, Inc., or any of their respective related or affiliated entities, subsidiary entities, principals, or employees;

---

in the Receivership Estate.  The inclusion of a Person within the definition of "Bar Order Parties" encompasses all manners in which such Person invested in one or more Founding Partners Funds, including but not limited to investments made or held through an Individual Retirement Account ("IRA") or a trust.

(ix)     any request or demand pursuant to 735 ILCS 5/8-2005 or similar statutes, rules, or authorities related to or arising from Mayer Brown's relationship with, services for, or conduct with respect to MasterFactor, Inc., any one or more of the Founding Partners Entities, and/or any of the personnel of any of the Founding Partners Entities, including but not limited to Gunlicks;

(x)     any matter or fact that was asserted or alleged in, or that could have been asserted or alleged in, the Litigation, the SEC Action, or any proceeding concerning Gunlicks or the Founding Partners Entities pending or commenced in any Forum, regardless of whether such matter or fact was asserted or alleged against Mayer Brown, Mayer Brown's counsel, or any other Person; or

(xi)     the subject matter of the Litigation, the SEC Action, or any proceeding concerning Gunlicks or the Founding Partners Entities that is pending or was commenced in any Forum on or after March 25, 2009.

"Settled Claims" also specifically includes, without limitation, all claims (or facts relating thereto) against Mayer Brown or the Mayer Brown Released Parties that each Bar Order Party does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected his, her, or its decisions with respect to the Agreement and the Settlement. "Settled Claims" also includes contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts. Each Bar Order Party releases and relinquishes any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which govern or limit the release of or time for asserting

unknown, unsuspected, unaccrued, or allegedly concealed claims, including, without

limitation, California Civil Code § 1542 and any similar statute.[7]

(3) **Release of Receiver Released Parties:**  Pursuant to the provisions of Paragraph 56 of

the Agreement, and as of the Settlement Effective Date, the Receiver Released Parties[8]

shall be completely released, acquitted, and forever discharged by Mayer Brown from all

Settled Claims.

(4) **Bars, Restraints, and Injunctions:**  The Court hereby permanently bars, restrains, and

enjoins all Bar Order Parties (and all Persons acting in concert with such Bar Order Party

or claiming by, through, or under such Bar Order Party), all and individually, from directly,

indirectly, or through a third party, instituting, reinstituting, intervening in, initiating,

commencing, maintaining, continuing, filing, encouraging, soliciting, supporting,

participating in, collaborating in, or otherwise prosecuting, against Mayer Brown or any of

the Mayer Brown Released Parties, (i) the Litigation (except as is necessary to bring the

Litigation to final conclusion with respect to Mayer Brown pursuant to the terms of the

Agreement), or (ii) any action, lawsuit, cause of action, claim, investigation, demand, levy,

complaint, or proceeding of any nature in any Forum, including, without limitation, any

court of first instance or any appellate court, whether individually, derivatively, on behalf

of a class, as a member of a class, or in any other capacity whatsoever, that in any way

---

[7] California Code § 1542 provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her, would have materially affected his or her settlement with the debtor or released party."

[8] "Receiver Released Parties" means the Receiver and the Assignors, and each of their counsel.  "Receiver Released Parties" also includes each of the foregoing persons' respective present and former partners, limited partners, general partners, officers, directors, employees, legal and equitable owners, trustees, shareholders, members, managers, principals, agents, attorneys, legal representatives, affiliated persons or entities, owners, predecessors, successors, beneficiaries, assigns, heirs, executors, administrators, lenders, indemnitors, direct and indirect parents, subsidiaries, affiliates, and beneficially owned entities conducting business for or providing services to any of them.  "Receiver Released Parties" shall also include the insurers and reinsurers of any of the foregoing, solely in their capacities as insurers or reinsurers of such entities with respect to the Settled Claims.

relates to, is based upon, arises from, or is connected with the Founding Partners Entities or William L. Gunlicks; this case or its subject matter; the Litigation or its subject matter; or any Settled Claim.

(5) The foregoing specifically includes (but is not limited to) any claim against any Mayer Brown Released Party, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Bar Order Party or the claim asserted by such Bar Order Party arises out of, relates to, or is based in whole or in part upon (a) such Bar Order Party's actual or alleged liability to the Receiver, the Receivership Estate, or the Founding Partners Entities, or (b) money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to the Receiver, the Receivership Estate, or the Founding Partners Entities, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  There is no indication of collusion, bad faith, or wrongful conduct between the Parties in connection with reaching agreement on the Settlement and the Settlement Amount, and the Court affirmatively finds that there has been none.  As such, the Court expressly finds that the Agreement was entered into in good faith.

(6) **Exclusions:**  The foregoing releases, bars, injunctions, and restraints do not (i) release the rights and obligations of the Receiver and Mayer Brown under the Settlement, the Agreement, or this Final Settlement Approval & Bar Order; (ii) bar the Receiver or Mayer Brown from enforcing, effectuating, or suing for alleged breaches of the Settlement or the Agreement;  (iii) bar Mayer Brown, FP Offshore, Ltd., Gunlicks, Gunlicks' counsel (William J. Delaney, individually and on behalf of Delaney Law, P.C.), or Ernst & Young LLP from enforcing, effectuating, or suing for alleged breaches of the release agreements applicable to them and attached as Exhibits A, B, and H to the Agreement; (iv) bar any

Person released under the Agreement, the release agreements attached as Exhibits A, B, and H to the Agreement, or this Final Settlement Approval & Bar Order from enforcing, effectuating, or suing to enforce such release; or (v) affect the evidence that the Receiver or Ernst & Young LLP may offer in connection with the Receiver's claims against Ernst & Young LLP asserted in the Litigation or in related arbitration proceedings.  Nothing in Part II.C of this Final Settlement Approval & Bar Order is intended to bar claims against Persons other than Mayer Brown and the Mayer Brown Released Parties, or to create rights in such other Persons against any Bar Order Parties.

(7)   Nothing in this Final Settlement Approval & Bar Order, or the release agreement between Mayer Brown and Ernst & Young LLP that is attached as Exhibit H to the Agreement, shall impair or affect, or be construed to impair or affect in any way whatsoever, any right of any Bar Order Party or any other Person to: (a) claim, based upon the Settlement or payment of the Settlement Amount, a credit or offset against any judgment amount, if and to the extent provided by any applicable statute, code, or rule of law; or (b) designate a "responsible party" under Fla. Stat. § 768.81(3) and/or *Fabre v. Marin,* 623 So. 2d 1182 (Fla. 1993) and similar statutes or rules in other jurisdictions; or (c) seek discovery from Mayer Brown or the Mayer Brown Released Parties under applicable rules in litigation; provided, for the avoidance of doubt, that neither shall anything in this paragraph be interpreted to permit or authorize any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification, or otherwise) upon Mayer Brown or any other Mayer Brown Released Party.  However, nothing in this Final Settlement Approval & Bar Order shall alter the various agreements on discovery matters that are reflected in Paragraph 61 of the

Agreement; the release between Gunlicks, Delaney, and Mayer Brown that is attached as Exhibit B to the Agreement; or the release between Mayer Brown and Ernst & Young LLP that is attached as Exhibit H to the Agreement.

(8) Notwithstanding anything herein or in the Agreement to the contrary, this Final Settlement Approval & Bar Order shall not apply to any federal, state, or local governmental agency, including but not limited to the Securities and Exchange Commission.

(9) **No Responsibility or Liability for Mayer Brown Released Parties for Certain Matters:** Mayer Brown and the rest of the Mayer Brown Released Parties have no responsibility, obligation, or liability whatsoever for the following:

(xii)     any attorneys' fees, costs, or expenses that may be owed to or approved for payment to the Receiver's counsel;

(xiii)     the content of the Notice, the distribution of the Notice, or the Notice process;

(xiv)     the creation, terms, interpretation, or implementation of the Distribution Plan(s);

(xv)     the administration of the Settlement;

(xvi)     the management, investment, or distribution of the Settlement Amount (or any portion thereof) or any other funds paid or received in connection with the Settlement, once the Settlement Amount (or any portion thereof) is paid to the Receiver pursuant to Section IV of the Agreement;

(xvii)     the payment or withholding of Taxes that may be due or owing by the Receiver or the Receivership Estate once the Receiver receives the Settlement Amount or any portion thereof, or due and owing by any recipient of funds from the Settlement Amount;

(xviii)     the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid to or received by Approved Claimants in connection with the Settlement, the Agreement, or the Distribution Plan(s); or

(xix)     any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred by the Receiver or any other Person, other than Mayer Brown or the Mayer Brown Released Parties, in connection with any of the foregoing matters.

No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Agreement, or this Final Settlement Approval & Bar Order, unless such appeal, challenge, decision, or other matter means any of the Conditions has failed to come to pass such that the Settlement Effective Date has not arisen pursuant to Paragraph 23 of the Agreement.

(10) **No Admission of Fault:**  Nothing in this Final Settlement Approval & Bar Order or the Agreement (including its exhibits), and no aspect of the Settlement or negotiation or mediation thereof, is or shall be construed to be a finding, admission, or concession of (a) any violation of any statute or law; (b) any fault, liability, or wrongdoing; or (c) any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in the Litigation, or any other proceeding.

(11) **Continuing Jurisdiction:**  Without in any way affecting the finality of this Final Settlement Approval & Bar Order, the Court retains continuing and exclusive jurisdiction over the Receiver, the Receivership Estate, and all Bar Order Parties for purposes of (i) the Approval Motion, the Preliminary Approval & Scheduling Order, the Notice, the Distribution Plan(s), and this Final Settlement Approval & Bar Order (including, without limitation, the injunctions, bar orders, and releases herein); (ii) entering orders concerning the administration or implementation of the Settlement, the Agreement, and the Distribution Plan(s); (iii) the continuation of this proceeding and the Receivership; and (iv) the activities and conduct of the Receiver.  This provision is intended to be consistent with the agreement between the Receiver and Mayer Brown, reflected in Section XVIII of

the Agreement, that the Broward Court otherwise shall have exclusive jurisdiction over disputes between the two of them.

(12)   **Finality:** This Final Settlement Approval & Bar Order (i) includes a permanent injunction appealable under 28 U.S.C. § 1292(a)(1), and (ii) resolves all claims that are pending in this proceeding with respect to an asset of the Receivership Estate—namely, the Receiver's claims against Mayer Brown.  Upon entry of this Final Settlement Approval & Bar Order, there is no further action required by this Court to resolve the Receiver's claims against Mayer Brown.  No claims that remain pending in this proceeding seek the same relief, and there is no factual overlap between the matters resolved in this Final Settlement Approval & Bar Order and the claims and issues left to be addressed in this proceeding.  As such, the Court expressly finds and determines that this Final Settlement Approval & Bar Order is a partial final judgment under Federal Rule of Civil Procedure 54(b).  The Court also expressly finds and determines, pursuant to Rule 54(b), that there is no just reason for any delay in entering this partial final judgment.  To the contrary, any delay in this Final Settlement Approval & Bar Order reaching finality would defeat the purpose of the Settlement (and impede the progress of this Receivership proceeding) because the Settlement is expressly conditioned on this Final Settlement Approval & Bar Order becoming Final as defined in the Agreement.  Deferring finality of this Final Settlement Approval & Bar Order until the Receivership proceeding is fully and finally concluded as to all matters and all issues would delay the effectiveness of the Settlement and thereby delay the payment of the Settlement Amount into the Receivership Estate.  For all these reasons, the Court intends this Final Settlement Approval & Bar Order to become

Final upon the expiration of any right to appeal, despite the continued pendency of this proceeding, including the Receivership.

(13) **Service of Final Settlement Approval & Bar Order:**  Counsel for the Receiver shall serve this Final Settlement Approval & Bar Order via email, first-class mail or international delivery service, on any Person who filed an objection to approval of the Settlement, the Agreement, or this Final Settlement Approval & Bar Order.

(14)  Pursuant to Fed. R. Civ. P. 58(b)(2), the Clerk of the Court shall enter a partial final judgment incorporating and referencing this Final Settlement Approval and Bar Order Regarding Receiver's Litigation With Mayer Brown LLP.  The case otherwise remains open.

**DONE AND ORDERED** in Fort Myers, Florida, on this   5th   day of February, 2021.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies furnished:
All counsel of record